# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
December 26, 2017

v

CODY CORY-LEA CONNOLLY,

Defendant-Appellant.

No. 333703
Allegan Circuit Court
LC No. 15-019622-FH

Before: MARKEY, P.J., and HOEKSTRA and RONAYNE KRAUSE, JJ.

PER CURIAM.

A jury convicted defendant of torture, MCL 750.85, interfering with the reporting of a crime by using threats of death or injury, MCL 750.483a(2)(b), assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84, aggravated domestic violence, second offense, MCL 750.81a(2); MCL 750.81a(3), and interfering with electronic communications, MCL 750.540(5)(a).[1] The trial court sentenced defendant to concurrent prison terms of 20 to 45 years for the torture conviction, 5 to 10 years each for the interfering with the reporting of a crime and AWIGBH convictions, three to five years for the aggravated domestic violence conviction, and one to two years for the interfering with electronic communications conviction. Defendant appeals as of right. For the reasons explained in this opinion, we affirm.

Defendant's convictions arise from an altercation with his now ex-wife in the couple's bedroom. According to the victim, defendant accused her of exchanging text messages with another man and demanded to see her cell phone. When the victim refused, defendant pulled her off the end of the bed by her feet and onto the floor. The victim went into the bathroom with her phone and locked the door. Defendant used his body to break open the bathroom door, and then began choking the victim. Defendant subsequently grabbed the victim by her hair, pulled her down, and dragged her out of the bathroom and into the bedroom. The victim got up and ran to the bathroom to retrieve her cell phone, and as she was attempting to call 911, defendant grabbed her phone and put it in the toilet. Defendant then pulled the victim out of the bathroom by her arm. The victim grabbed a table lamp and struck defendant in the head before running for the

---

[1] The jury acquitted defendant of additional charges of unlawful imprisonment, MCL 750.349b, and assault by strangulation, MCL 750.84(1)(b).

bedroom door, but defendant blocked the door, preventing her from leaving. The victim tried to get out of the bedroom by climbing through a window, but defendant pulled her back, causing her to pull down the curtains. As the victim tried to get around defendant to the door, he grabbed her by the waist, lifted her off the floor, and then "body slammed" her to the floor.

According to the victim, she experienced the "worst pain" she had ever felt. She could not move or get up from the floor. Defendant denied the victim's request to call an ambulance and, instead, began audio recording the victim with his cell phone. For about an hour and a half, the victim remaining lying on the floor, screaming and asking for medical assistance, as defendant negotiated with her to devise a story to explain her injuries and told her that she should suffer. In the audio recording defendant told the victim that the couple would lose custody of their child and defendant's other children if it was determined that the victim's injuries were the result of domestic violence. Ultimately, defendant's grandmother arrived at the house and, after an approximately 30 minute drive with defendant and his grandmother, the victim arrived at the hospital, where it was determined that the victim suffered a fracture of her pelvis. She also had bruise marks around her neck and abrasions on her shoulders and arms. Defendant did not deny that the incident occurred, but claimed that the victim was the aggressor and that her description of the incident was inaccurate. The jury convicted defendant as noted above, and defendant now appeals as of right.

## I. SUFFICIENCY OF THE EVIDENCE OF TORTURE

Defendant argues on appeal that the prosecution failed to present sufficient evidence to support his conviction for torture. In particular, defendant contends that the victim was not within his custody or physical control at the time of her injury, that the victim's broken pelvis did not rise to the level of great bodily injury, and that he did not throw her to the ground with the intent to cause cruel or extreme physical or mental pain and suffering. We disagree.

This Court reviews de novo a defendant's challenge to the sufficiency of the evidence. *People v Henderson*, 306 Mich App 1, 8; 854 NW2d 234 (2014). We view the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the prosecution proved the crime's elements beyond a reasonable doubt. *Id*. at 9. "All conflicts in the evidence must be resolved in favor of the prosecution and we will not interfere with the jury's determinations regarding the weight of the evidence and the credibility of the witnesses." *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008). "In general, questions of intent are factual determinations for the trier of fact to make." *People v Burns*, 494 Mich 104, 117 n 39; 832 NW2d 738 (2013). "Because of the difficulty in proving an actor's intent, only minimal circumstantial evidence is necessary to show that a defendant had the requisite intent." *People v Stevens*, 306 Mich App 620, 629; 858 NW2d 98 (2014).

Michigan's torture statute, MCL 750.85, provides, in relevant part:

(1) A person who, with the intent to cause cruel or extreme physical or mental pain and suffering, inflicts great bodily injury or severe mental pain or suffering upon another person within his or her custody or physical control commits torture and is guilty of a felony punishable by imprisonment for life or any term of years.

To obtain a conviction for torture, the prosecution must prove that: (1) the defendant had custody or physical control over the victim, meaning that the defendant forcibly restricted the victim's movements or forcibly confined the victim so as to interfere with the victim's liberty, (2) the defendant exercised custody or physical control over the victim without her consent or without lawful authority, (3) while the defendant had custody or physical control over the victim, he intentionally caused great bodily injury and/or severe mental pain or suffering to the victim, and (4) the defendant intended to cause the victim to suffer cruel or extreme physical pain or mental pain and suffering. MCL 750.85(1) and (2)(b); M Crim JI 17.36. Proof that a victim suffered pain is not an element of torture. MCL 750.85(3).

With respect to the elements of torture, defendant first argues that the evidence was insufficient to prove torture because there was no evidence that he forcibly restricted the victim's movement or forcibly confined the victim at the time he threw her to the ground. More specifically, defendant contends that the victim's inability to leave the room was a result of immobility caused by her pelvic injury, meaning that she was not confined at the time he inflicted the injury. Defendant's argument overlooks the victim's testimony that throughout the incident she "was just trying to leave and he wouldn't let me leave," that defendant was blocking the bedroom door, and that the victim tried to escape through the bedroom window but defendant pulled her back. The victim testified that defendant threw her cell phone in the toilet and refused her request to call an ambulance. This testimony was sufficient to allow a rational trier of fact to find beyond a reasonable doubt that defendant forcibly restricted or confined the victim to the bedroom without her consent at the time the injuries were inflicted and, thus, that she was within his custody or physical control.

Defendant also argues that the evidence was insufficient to prove that he intended "to cause cruel or extreme physical pain and suffering that would seriously impair a bodily function or cause visible disfigurement." This argument combines the third and fourth elements of the offense. Contrary to defendant's argument, the evidence was sufficient to establish that defendant intentionally inflicted great bodily injury and that, when he did so, defendant intended to cause the victim to suffer cruel or extreme physical pain. The torture statute defines "great bodily injury" as:

> (*i*) Serious impairment of a body function as that term is defined in section 58c of the Michigan Vehicle Code, 1949 PA 300, MCL 257.58c.

> (*ii*) One or more of the following conditions: internal injury, poisoning, serious burns or scalding, severe cuts, or multiple puncture wounds. [MCL 750.85(2)(c).]

Under MCL 257.58c, "[s]erious impairment of a body function" includes "[a] skull fracture or other serious bone fracture." MCL 257.58c(h). In this case, defendant picked up the victim and body slammed her onto the ground. As a result, the victim suffered a comminuted fracture of the iliac crest, which is a pelvic bone fracture. Medical testimony established that the iliac crest is a very strong bone that requires a great amount of force to break, that this type of fracture is very painful and would make ordinary activities extremely difficult, that the mortality rate for a patient with a pelvic fracture is three percent, and that the healing time is about 9 to 12 weeks.

The medical evidence was sufficient to establish that the victim suffered a "serious bone fracture" and, therefore, great bodily injury.[2]

The evidence was also sufficient to prove that when defendant inflicted great bodily injury he intended to cause cruel or extreme physical pain and suffering. As defined in the torture statute, "cruel" means "brutal, inhuman, sadistic, or that which torments." MCL 750.85(2)(a). As noted, the evidence in this case shows that defendant picked up the victim and used considerable force to slam her onto the floor. His actions left the victim immobile with a broken pelvis and, rather than obtain prompt medical assistance for the victim, defendant left the victim on the floor for an hour and a half, and it was approximately two hours before the victim arrived at the hospital. During that time, while the victim screamed in pain, defendant audio recorded the victim, he pressured her to lie about how she was injured, he denied her requests for an ambulance, and he told her that she should suffer. While defendant claims on appeal that he could not foresee that the victim would break her pelvis and that his actions after the fact were motivated by concern that he would lose custody of his children, his intent was a question for the jury. See *Burns*, 494 Mich at 117 n 39. And, "[i]ntent may be inferred from all the facts and circumstances," *People v Cameron*, 291 Mich App 599, 615; 806 NW2d 371 (2011), including an actor's conduct after inflicting injury, see *People v Brown*, 267 Mich App 141, 149 n 5; 703 NW2d 230 (2005); *Stevens*, 306 Mich App at 629. Viewed in a light most favorable to the prosecution, the evidence supported an inference that defendant caused great bodily injury to the victim with an intent to cause cruel or extreme physical pain and suffering. In sum, the evidence was sufficient to allow the jury to find beyond a reasonable doubt that defendant was guilty of torture.

## II. RIGHT TO PRESENT A DEFENSE

Defendant argues that the trial court erred by excluding evidence that the victim was involved in a fight four days before the charged offense. Defendant contends that this evidence was "highly relevant" to whether he "actually caused or intended to cause" the victim's injury. He maintains that the trial court's refusal to allow three witnesses to testify that they observed the fight violated his right to present a defense.

We review defendant's preserved evidentiary claim relating to the relevancy of this evidence for an abuse of discretion. *People v Orr*, 275 Mich App 587, 588; 739 NW2d 385 (2007). However, defendant did not argue below that exclusion of this evidence violated his constitutional right to present a defense, leaving the constitutional claim unpreserved. *People v Buie (On Remand)*, 298 Mich App 50, 70-71; 825 NW2d 361 (2012). We review defendant's unpreserved constitutional claim for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). To show that a plain error affected

---

[2] Defendant argues that the victim's bodily harm was not "great" because, although her injury was "painful" and "slow healing," it was not permanent. However, an injury need not be long-lasting or permanent to be considered a "serious impairment." *People v Thomas*, 263 Mich App 70, 76-77; 687 NW2d 598 (2004).

substantial rights, a defendant must establish prejudice, "i.e., that the error affected the outcome of the lower court proceedings." *Id*. at 763.

The right to present a defense is a fundamental element of due process that allows a defendant the opportunity to present his or her version of the facts to the jury. *Washington v Texas*, 388 US 14, 19; 87 S Ct 1920; 18 L Ed 2d 1019 (1967). However, this right is not absolute and "[t]he accused must still comply with 'established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.' " *People v Hayes*, 421 Mich 271, 279; 364 NW2d 635 (1984), quoting *Chambers v Mississippi*, 410 US 284, 302; 93 S Ct 1038; 35 L Ed 2d 297 (1973).

According to defendant's offer of proof at trial, defendant intended to call witnesses to testify that the victim was involved in a "very rough fight" at a party four days before her altercation with defendant. Defendant asserts that this evidence was relevant to whether the victim had a preexisting injury to her pelvis, and defendant argues that the victim's preexisting injury would be relevant to the question of whether defendant caused great bodily injury to the victim and whether he intended to cause her cruel or extreme physical pain when he threw the victim to the floor. The trial court did not allow defendant to present evidence of the victim's involvement in a fight four days before the charged offense because defendant was unable to offer evidence that the victim sustained an injury to her pelvis during the fight. Therefore, the court concluded that evidence of the fight was not relevant. The trial court's decision was not an abuse of discretion.

"Under the Michigan Rules of Evidence, evidence is admissible only if it is relevant as defined by MRE 401 and is not otherwise excluded under MRE 403." *People v Feezel*, 486 Mich 184, 197; 783 NW2d 67 (2010). In this case, even assuming that the victim had participated in a fight, there is no evidence that the victim did, in fact, suffer an injury to her pelvis as a result of this fight. To the extent defendant asserts that the victim—who was mobile before defendant threw her to the floor—may have injured her pelvis while fighting, his bald assertions amount to mere conjecture and speculation, which are not relevant. See generally *Unger*, 278 Mich App at 249. Absent evidence that the victim injured her pelvis in a fight, evidence of her participation in a fight would not be relevant because it would not have any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. MRE 401. Therefore, the trial court did not abuse its discretion by excluding this evidence, MRE 402; and the exclusion of this irrelevant evidence did not infringe on defendant's right to present a defense. *Unger*, 278 Mich App at 249-250.

Moreover, even if the trial court erred by excluding this evidence, defendant has not established that the error affected the outcome of the trial. While the trial court excluded evidence of the fight because there was no evidence that the victim injured her pelvis in the fight, the trial court did not preclude defendant from exploring whether the victim had a preexisting injury to her pelvis. Defense counsel was able to question the victim about possible preexisting injuries to her pelvis, which she denied, and to elicit testimony from defendant and defendant's mother that the victim had complained of pelvic pain before her altercation with defendant. The court also allowed defense counsel to ask the emergency room doctor if the x-ray revealed that the victim had a preexisting injury to her pelvis. However, the doctor testified that the x-ray

revealed that the injury was new. Defendant does not identify any other evidence of an actual preexisting injury that he was precluded from presenting.

In light of the doctor's testimony describing the nature of the victim's injury, the x-rays revealing no evidence of an old injury, and the victim's mobility before being attacked by defendant, no reasonable jury could conclude from the evidence that the victim was in a fight before her altercation with defendant that the victim had a preexisting injury such that defendant did not inflict a great bodily injury.[3] Likewise, while defendant contends that the possibility of a preexisting injury would tend to establish that he did not intend to cause the victim cruel or extreme physical pain when he threw her to the ground, his conduct after injuring the victim overwhelmingly demonstrates his intent to cause cruel or extreme physical pain.[4] In short, defendant is not entitled to relief based on the trial court's exclusion of evidence involving the victim's participation in a fight four days before her altercation with defendant.

### III. OTHER-ACTS EVIDENCE

Defendant next argues that the trial court abused its discretion by admitting evidence of defendant's prior domestic violence. The trial court admitted testimony from the mother of defendant's two oldest children under MCL 768.27b. Defendant concedes that the evidence was "relevant per MCL 768.27b," but he argues that the "sheer volume" of evidence diverted the jury's attention from the facts of this case and he asserts that "the description of several episodes [of domestic violence] warped the jury" such that the evidence was unduly prejudicial under MRE 403.

Contrary to defendant's arguments, the substantial probative value of the other acts evidence was not outweighed by the danger of unfair prejudice. "[I]n cases of domestic violence, MCL 768.27b permits evidence of prior domestic violence in order to show a defendant's character or propensity to commit the same act." *People v Railer*, 288 Mich App 213, 219-220; 792 NW2d 776 (2010). However, the evidence remains subject to the balancing test under MRE 403 and may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *People v Watkins*, 491 Mich 450, 481-486; 818 NW2d 296 (2012). Importantly, when applying the MRE 403 balancing test in the context of MCL 768.27b(1), the propensity inference must be weighed in favor of the evidence's probative value rather than in favor of its prejudicial effect. *Watkins*, 491 Mich at 486-487, 497. While the

---

[3] Indeed, it is well-settled that a defendant takes a victim as he finds her. *People v Brown*, 197 Mich App 448, 451; 495 NW2d 812 (1992). Even assuming that the victim had an injury before her altercation with defendant, she was undisputedly mobile until defendant threw her to the ground, after which she could not move. On these facts, whether or not the victim had a preexisting injury, the evidence plainly shows that defendant inflicted great bodily injury.

[4] Indeed, if, as defendant claims, the victim was purportedly injured in a previous fight—and had complained to defendant that her pelvis hurt—this only provides further evidence of his intent to cause her cruel or extreme physical pain by throwing her on the floor onto her hip.

propensity inference weighs in favor of the evidence's probative value, there are nevertheless several considerations that could lead a court to exclude evidence. *Id*. at 487

> These considerations include (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. This list of considerations is meant to be illustrative rather than exhaustive. [*Id.* at 487-488.]

Here, the mother of defendant's two oldest children described several instances of domestic violence that defendant committed against her while they were in a relationship, including instances in which defendant strangled her, threatened to beat her if she attempted to press charges against him, punched her and kicked her, destroyed her phone after she said she was going to call the police, locked her in their apartment and would not let her leave, broke her cheekbone, and refused to let her go to the hospital to seek treatment for her broken cheekbone. This evidence has considerable probative value in terms of establishing defendant's propensity to physically assault his romantic partners and to then prevent them from seeking help. See *Railer*, 288 Mich App at 219-220. This evidence was relevant to assessing credibility in this case, *Cameron*, 291 Mich App at 612, and it also gave the jury "the opportunity to weigh a defendant's behavioral history and view the case's facts in the larger context that the defendant's background affords," *People v Schultz*, 278 Mich App 776, 779; 754 NW2d 925 (2008) (citation omitted).

While defendant now claims this evidence was inadmissible under MRE 403, defendant has failed to present any particularized argument explaining how the evidence unduly prejudiced his defense. Although defendant complains about the amount of evidence and the details provided, the testimony in the present case involved only one witness,[5] and the testimony was remarkably similar to the victim's testimony in the present case, which enhanced its probative value. Further, the trial court instructed the jury on the limited, permissible use of the other-acts evidence, and we are not persuaded by defendant's argument that the instruction was insufficient to ensure that the jury properly used the evidence. See *Watkins*, 491 Mich at 490. Defendant has not demonstrated that the trial court abused its discretion in admitting this evidence.

## IV. AMENDMENT OF THE INFORMATION

Defendant next argues that the trial court erred by allowing the prosecution to amend the information after the preliminary examination to add a new charge of torture. We review a trial

---

[5] Defendant also notes that the victim in this case mentioned in her trial testimony that she had called the police on defendant in the past. Defendant argues this amounted to other acts evidence which was improper because defendant was not given notice that the victim would offer other acts evidence. Even assuming this testimony should not have been allowed, the victim's remark was fleeting and undetailed, and it did not affect the outcome of the trial given the other evidence of defendant's guilt.

court's decision to grant or deny a motion to amend the information for an abuse of discretion. *People v McGee*, 258 Mich App 683, 686–687; 672 NW2d 191 (2003). "An abuse of discretion occurs when the trial court reaches a result that is outside the range of principled outcomes." *People v Benton*, 294 Mich App 191, 195; 817 NW2d 599 (2011).

"Both MCL 767.76 and MCR 6.112(H) authorize a trial court to amend an information before, during, or after trial." *McGee*, 258 Mich App at 686. Although MCL 767.76 does not authorize amendment of the information for the purpose of adding a new offense, *id*. at 688, MCR 6.112(H) does allow the information to be amended to charge a new crime or additional offense, as long as the addition of the new crime does not unfairly surprise or prejudice the defendant. *Id*. at 689. To the extent that MCR 6.112(H) is inconsistent with MCL 767.76, the court rule, as a rule of procedure, supersedes MCL 767.76. *McGee*, 258 Mich App at 689.

In this case, the original information charged defendant with assault by strangulation, AWIGBH, aggravated domestic violence (second offense), and interfering with electronic communications. The second amended information added the charges of torture, unlawful imprisonment, and interfering with a crime report by threatening to kill or injure. The prosecutor filed a motion to amend the information two months before trial, after the audio recording retrieved from defendant's cell phone was analyzed. Defendant does not offer any argument to support a finding that the amendment, which was based on defendant's own recorded evidence, unfairly surprised or prejudiced him. Defendant was already prepared to defend against charges of assault by strangulation, AWIGBH, and aggravated domestic assault, and defending against the torture charge required no new preparation, strategy, or evidence, because defendant's theory of the case was that he was not the aggressor. Further, defendant was fully aware of the content of the evidence retrieved from his cell phone, and defendant requested that his cell phone be analyzed. There was no unfair surprise or prejudice, and the trial court did not abuse its discretion by allowing amendment of the information. *McGee*, 258 Mich App at 692.

In arguing that the trial court erred by allowing the prosecutor to amend the information, defendant emphasizes that a preliminary examination was not held on the torture charge and he asserts that the charge of torture would have been dismissed before trial had a preliminary examination on the charge been held because the evidence of torture was insufficient. However, it is well settled that errors in the sufficiency of proofs at the preliminary examination must be considered harmless if sufficient evidence is presented at trial to convict the defendant of the charges. *People v Bennett*, 290 Mich App 465, 481; 802 NW2d 627 (2010). As discussed earlier, sufficient evidence was presented at trial to convict defendant of torture. Therefore, defendant has not demonstrated that he was prejudiced by the failure to conduct a preliminary examination on the torture charge. See *McGee*, 258 Mich App at 693.

## V. JURY INSTRUCTIONS ON SELF-DEFENSE

Defendant argues that the trial court erred by failing to provide the jury with complete instructions on self-defense. At trial, the trial court instructed the jury on M Crim JI 7.20. Defendant did not request additional instructions on self-defense, and defense counsel affirmatively stated that he had no objections to the instructions given, thereby waiving any claim of instructional error. *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011). Therefore, review of this issue is limited to defendant's related contention that defense counsel

was ineffective for not objecting to the trial court's self-defense instruction. See *People v Eisen*, 296 Mich App 326, 329-330; 820 NW2d 229 (2012).

Because defendant did not raise the issue of ineffective assistance in a motion for a new trial or request for an evidentiary hearing in the trial court, our review is limited to errors apparent from the record. *People v Putman*, 309 Mich App 240, 246; 870 NW2d 593 (2015). To establish ineffective assistance of counsel, defendant must show that counsel's performance fell below an objective standard of reasonableness, and that there is a reasonable probability that the result of the proceeding would have been different but for counsel's error. *People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007).

"A criminal defendant has the right to have a properly instructed jury consider the evidence against him." *People v Mills*, 450 Mich 61, 80; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995). "[J]ury instructions must include all the elements of the charged offenses and any material issues, defenses, and theories that are supported by the evidence." *People v McKinney*, 258 Mich App 157, 162-163; 670 NW2d 254 (2003). "Failing to request a particular jury instruction can be a matter of trial strategy." *People v Dunigan*, 299 Mich App 579, 584; 831 NW2d 243 (2013).

In this case, the jury received an instruction on the burden of proof when self-defense is asserted, M Crim JI 7.20. Defendant now contends that defense counsel should have requested additional instructions on self-defense, including instructions on defendant's right to use self-defense where the defendant honestly and reasonably believed he was in danger of imminent death or serious bodily harm and used only the amount of force that appeared immediately necessary to protect against that danger, and that there is no duty to retreat as an alternative to resorting to the use of deadly force. See M Crim JI 7.15; MCL 780.972. However, even if counsel's failure to request more thorough instructions on self-defense fell below professional norms, defendant is not entitled to relief because he cannot show prejudice. Defendant asserts that the prejudice prong was satisfied because "the jury was not given an instruction in accordance [with] the defense theory of the case." Defendant fails to discuss, however, whether there is a reasonable probability that the result of the proceeding would have been different had defense counsel requested and received additional instructions on self-defense. Considering the overwhelming evidence of defendant's guilt, we are not persuaded that there is a reasonable probability that additional instructions on self-defense would have affected the outcome.

In particular, while defendant attempts to categorize this case as a pure credibility contest between himself and the victim, there is other evidence supporting the victim's version of the events. For instance, although defendant took great effort to attempt to describe his own injuries as he was recording the incident, such as an eye that was swelled shut, the photographs submitted at trial and the testimony do not support his description of the injuries or that he suffered the injuries. In contrast, the victim suffered a broken pelvis and medical evidence indicated it would take considerable force—on par with a car accident—to cause such an injury. The victim's other injuries, including marks on her neck and abrasions on her shoulders and arms, further supported the victim's version of events. Additionally, there is of course the audio recording of defendant's refusal to help the immobile victim obtain medical treatment while she screamed in pain and he attempted to concoct a story to explain her injuries. Added to this evidence is the other acts evidence of domestic violence defendant perpetrated against a former girlfriend, which

established that defendant had a propensity to commit acts of domestic violence and which bolstered the victim's credibility in this case. See *Cameron*, 291 Mich App at 612. Given the overwhelming evidence that defendant did not act in self-defense, counsel's failure to request additional instructions on self-defense did not affect the outcome and defendant is not entitled to relief. See *Frazier*, 478 Mich at 243.

## VI. SCORING OF THE SENTENCING GUIDELINES

Finally, defendant argues that the trial court erred in scoring offense variables (OVs) 7, 8, and 19 of the sentencing guidelines. We review for clear error a trial court's factual findings used to score the sentencing guidelines; such facts must be supported by a preponderance of the evidence. *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). In scoring the sentencing guidelines, courts may consider the entire record, including the presentence investigation report, a defendant's admissions at a plea hearing or trial, and evidence introduced during a preliminary examination or trial. *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012).

Defendant argues that the trial court erred by assessing 50 points for OV 7, which, at the time the offense was committed, authorized a 50-point score when "[a] victim was treated with sadism, torture, or excessive brutality, or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MCL 777.37(1)(a).[6] In this case, the trial court explained its decision to assess 50 points for OV 7 as follows:

> But what the Court finds more telling in regards to scoring 50 points in this case is that the Defendant recorded the victim in her pain as if somehow or another this – somehow or another recording that was a benefit to someone. And the only benefit that the Court can possibly see is that the Defendant derived some strange benefit from that. The purpose was actually to humiliate [the victim]. Listening to that audio recording was painful for the jury, painful for the Court. Listening to her scream repeatedly for help while [defendant] in a very calm voice was trying to explain to her how he couldn't [call] for the appropriate help, for police or an ambulance, because they needed to come up with a story to cover up what he did to her.

The court's comments indicate that it assessed 50 points under the first category, sadism, which is defined as "conduct that subjects a victim to extreme or prolonged pain or humiliation

---

[6] MCL 777.37(1)(a) was amended by 2015 PA 137, effective January 5, 2016, to add the words "similarly egregious" before the word "conduct." However, MCL 769.34(2) requires the trial court to apply the version of the guidelines "in effect on the date the crime was committed." Therefore, we consider the version of MCL 777.37(1)(a) in effect in August of 2015, when defendant committed the instance offense.

and is inflicted to produce suffering or for the offender's gratification." MCL 777.37(3). The evidence indicated that defendant refused the victim's requests for medical attention for approximately an hour and a half as she was screaming in pain and telling him that her hip was broken and that she could not move, while also telling her that she needed to suffer. This evidence supports a finding that defendant treated the victim with sadism and, therefore, supports a score of 50 points.

Defendant next argues that the trial court erred by assessing 15 points for OV 8. MCL 777.38(1)(a) provides for a 15-point score if "[a] victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense." In this case, the trial court determined, in part, that 15 points should be assessed because the victim "was held captive beyond the time necessary to commit the offense." This finding was not clearly erroneous given the abundant evidence that defendant held the victim captive beyond the time necessary to commit the offense of torture. Before and after the victim was thrown to the floor, defendant prevented her from leaving the bedroom, thereby holding her captive. After the injury that resulted in the fracture of the victim's pelvis, the victim was immobile and confined to the floor for approximately an hour and a half without access to a phone, and defendant refused her requests to call an ambulance, thereby preventing her from leaving the house. Under these circumstances, the evidence supports a score of 15 points for OV 8.

Lastly, defendant argues that the trial court erred in assessing 15 points for OV 19. Fifteen points are properly scored for OV 19 if the "offender used force or the threat of force against another person or the property of another person to interfere with, attempt to interfere with, or that results in the interference with the administration of justice or the rendering of emergency services." MCL 777.49(b). In this case, the victim testified that, during her altercation with defendant, she tried to call 911, but defendant fought her for the phone and then threw the phone in the toilet. Taking the victim's phone and exerting force against the phone to throw it in the toilet prevented the victim from calling 911 and this warranted a score of 15 points for OV 19. See *People v Smith*, 318 Mich App 281, 287; 897 NW2d 743 (2016). In addition, defendant exerted force against the victim when he threw her to the ground. See *id.* at 286. This use of force resulted in the interference with the administration of justice and the rendering of emergency services insofar as defendant's use of force left the victim immobile and unable to obtain help. Indeed, having used force to render the victim immobile, despite repeated requests from the victim to call the police or call an ambulance, defendant delayed obtaining emergency services for the victim so that he could concoct a story to explain the victim's injuries. This evidence supports a 15-point score for OV 19.

Affirmed.

/s/ Jane E. Markey
/s/ Joel P. Hoekstra
/s/ Amy Ronayne Krause