PEOPLE v THOMAS

Docket No. 245668. Submitted June 8, 2004, at Lansing. Decided July 13, 2004, at 9:10 A.M. Leave to appeal sought.

Samuel M. Thomas was convicted after a bench trial in the Jackson Circuit Court of causing a serious impairment of a body function to a police officer while resisting arrest, MCL 750.81d(3), and of being a fourth-offense habitual offender, MCL 769.12. The court, Alexander C. Perlos, J., determined that the injuries suffered by the police officer were sufficiently serious to support a conviction under that statute and imposed a minimum sentence in excess of the applicable sentencing guidelines range. The defendant appealed.

The Court of Appeals *held*:

1. The no-fault act definitions and precedents construing the phrase "serious impairment of body function" are not relevant in a criminal case under MCL 750.81d(3) because that statute, through MCL 257.58c, defines the phrase differently and with different limitations than does the no-fault act.

2. The injured officer's leg injury, which caused him to lose the use of that limb almost completely for several weeks and less so for the several months before he could return to work, is a loss of the use of a limb sufficient to fall within the serious impairment of a body function category under MCL 257.58c(a).

3. The broken bone in the officer's neck constituted a serious impairment of a body function under MCL 257.58c(h) and (i) because any vertebral bone fracture is properly considered a serious impairment of a body function.

4. The trial court articulated four reasons for departing from and above the sentencing guidelines range, including the defendant's disregard for the officer's life and the defendant's thirty-four misconduct citations received previously in prison. These are substantial and compelling reasons for the departure above the sentencing guidelines range.

Affirmed.

CRIMINAL LAW — RESISTING ARREST — INJURED OFFICER — SERIOUS IMPAIRMENT OF A BODY FUNCTION.

In determining whether the injuries received by a police officer from a suspect who resisted arrest constitute a serious impairment of a body function for purposes of the statute that makes it a felony to resist arrest and cause a serious impairment of a body function, a court must consider the similarity of the injuries sustained to the injuries specified in a nonexhaustive statutory list (MCL 850.81d[3], [7][c]; MCL 257.58c).

*Michael A. Cox,* Attorney General, *Thomas L. Casey,* Solicitor General, *Henry C. Zavislak,* Prosecuting Attorney, and *Jerrold Schrotenboer,* Chief Appellate Attorney, for the people.

State Appellate Defender (by *Randy E. Davidson*) for the defendant.

Before: FITZGERALD, P.J., and BANDSTRA and SCHUETTE, JJ.

BANDSTRA, J. Following a bench trial, defendant was convicted of causing a serious impairment of a body function while resisting an arrest, MCL 750.81d(3), and was sentenced as a fourth-offense habitual offender, MCL 769.12, to twenty to forty years of imprisonment. His primary argument on appeal is that the injuries suffered by the police officer were not serious enough to support a conviction under that statute. We conclude that they were and affirm defendant's conviction. In addition, we conclude that the trial court did not err in imposing a minimum sentence in excess of the applicable guidelines range.

### BACKGROUND FACTS

While driving his pickup truck with the headlights off in the middle of the night, defendant was stopped by a

police officer. Asked to provide his driver's license, registration, and proof of insurance, defendant said he did not have them and, when asked his name, defendant said he was dyslexic and could not spell. The officer asked defendant to step out of the truck, but defendant instead attempted to start the vehicle and leave. The officer reached into the truck with his right arm to prevent defendant's escape and became entangled in the steering wheel as defendant drove the truck away. The truck carried the officer along in this fashion for some distance and then appeared to be headed directly toward a tree. The officer renewed his efforts to extricate himself and was successful, sliding across the pavement and striking his head against a curb. The truck continued down the street. Defendant later stated that he had been on parole at the time, that he did not want to go back to jail, and that he did not care what he did to try to get away.

Defendant's challenge to his conviction centers on the injuries suffered by the officer. In addition to various scrapes, bruises, and abrasions, the officer's left knee was sprained and a vertebral bone in his neck was broken. The sprain to the left leg was described by the officer's treating physician as "severe." The officer was unable to walk without crutches for several weeks and missed approximately 2-1/2 months of work. However, the treating physician opined that the leg injury was completely healed at the time of defendant's trial. The bone that was broken in the officer's neck did not involve any nerve components and thus, fortunately, the extreme injuries that could have occurred (paralysis or death) did not result. However, the treating physician testified that there was a fifty-fifty possibility that future problems could develop as a result of the broken vertebral bone.

## 1. MCL 750.81D(3)—"SERIOUS IMPAIRMENT OF A BODY FUNCTION"

### STANDARD OF REVIEW

Defendant argues that there was insufficient evidence to conclude that the officer suffered a "serious impairment of a body function" under MCL 750.81d(3). The question here turns on the interpretation of that statutory phrase, a matter we review de novo. *People v Davis*, 468 Mich 77, 79; 658 NW2d 800 (2003).

The primary goal of statutory interpretation is " 'to ascertain and give effect to the intent of the Legislature.' " *People v Weeder*, 469 Mich 493, 497; 674 NW2d 372 (2004), quoting *People v Pasha*, 466 Mich 378, 382; 645 NW2d 275 (2002). "If a statute is clear, it must be enforced as plainly written." *People v Spann*, 250 Mich App 527, 530; 655 NW2d 251 (2002). "However, if a statute is susceptible to more than one interpretation, judicial construction is proper to determine legislative intent." *Id.* "Statutory language should be construed reasonably, keeping in mind the purpose of the act." *Id.* "When terms are not expressly defined by statute, a court may consult dictionary definitions." *Id.* "Words should be given their common, generally accepted meaning, if consistent with the legislative aim in enacting the statute." *Id.*

### ANALYSIS

Defendant was convicted under MCL 750.81d(3), which provides:

> An individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties causing a serious impairment of a body function

of that person is guilty of a felony punishable by imprisonment for not more than 15 years or a fine of not more than $10,000, or both.

At issue here is whether defendant caused "a serious impairment of a body function" as required by this section. MCL 750.81d(7)(c) specifies that this term is to be defined as it is in MCL 257.58c, which provides:

> "Serious impairment of a body function" includes, but is not limited to, 1 or more of the following:
>
> (a) Loss of a limb or loss of use of a limb.
>
> (b) Loss of a foot, hand, finger, or thumb or loss of use of a foot, hand, finger, or thumb.
>
> (c) Loss of an eye or ear or loss of use of an eye or ear.
>
> (d) Loss or substantial impairment of a bodily function.
>
> (e) Serious visible disfigurement.
>
> (f) A comatose state that lasts for more than 3 days.
>
> (g) Measurable brain or mental impairment.
>
> (h) A skull fracture or other serious bone fracture.
>
> (i) Subdural hemorrhage or subdural hematoma.
>
> (j) Loss of an organ.

On appeal, both parties note the similarity between this statutory scheme's use of the phrase "serious impairment of a body function" and the no-fault act's use of the phrase "serious impairment of body function." MCL 500.3135(1). Defendant argues that the two statutes should be considered together under the doctrine of "in pari materia" because they "relate to the same subject or share a common purpose," citing *People v Webb*, 458 Mich 265, 274; 580 NW2d 884 (1998). Both parties rely on precedents construing the no-fault act provision to argue for their interpretation of the criminal statute at issue here.[1] We begin our analysis by rejecting that approach.

---

[1] The parties cite, and we could find, no precedents analyzing the criminal statute's definition of "a serious impairment of a body function."

The two statutes do not relate to the same subject or share a common purpose. The no-fault act provides a system of civil compensation and liability for automobile accidents; the statute at issue here prohibits and criminalizes assaultive behavior while resisting an arrest. The two statutes have nothing to do with one another and the doctrine of in pari materia does not apply.

Further, if " 'a statute supplies its own glossary, courts may not import any other interpretation but must apply the meaning of the terms as expressly defined.' " *People v Brown*, 249 Mich App 382, 385; 642 NW2d 382 (2002), quoting *People v Schultz*, 246 Mich App 695, 703; 635 NW2d 491 (2001). As noted above, the criminal statute here does provide its own definition of a "serious impairment of a body function." Moreover, that definition is significantly different than the definition of "serious impairment of body function" in the no-fault act. For example, the no-fault act's definition requires that such an impairment must be "objectively manifested," MCL 500.3135(7), a requirement that does not appear in the criminal statute. MCL 257.58c. Similarly, the no-fault act limits the "serious impairment" definition by specifying that the body function affected must be an "important" one and that the impairment must "affect[] the person's general ability to lead his or her normal life." MCL 500.3135(7). In contrast, the criminal statute's definition of a "serious impairment" has no such limitations. It is clear that the category of injuries that constitute a "serious impairment of a body function" under the criminal statute is broader than the category of injuries constituting a "serious impairment of body function" under the no-fault act. Thus, the no-fault act definitions and precedents construing it are not helpful.

We turn instead to the language of the criminal statute at issue here. We first note that the listing of

injuries within the statute is not exhaustive, but that, instead, a " 'serious impairment of a body function' includes, but is not limited to" the listed injuries. The specific injuries suffered by the officer here are not within the statutory listing and the question presented is whether they nonetheless constitute serious impairments of body functions within the meaning of the statute.

Although it is not directly applicable,[2] we find helpful the *ejusdem generis* canon of statutory construction. Under this canon, the scope of a broad general term following a series of items is construed as including "things of the same kind, class, character, or nature as those specifically enumerated . . . ." *Weakland v Toledo Engineering Co, Inc*, 467 Mich 344, 349; 656 NW2d 175 (2003), quoting *Huggett v Dep't of Natural Resources*, 464 Mich 711, 718-719; 629 NW2d 915 (2001). Thus, to determine whether injuries to the officer here constitute serious impairments of a body function under the statute, we consider their similarity to injuries within the statutory list.

We first note that an injury need not be long-lasting to be considered a "serious impairment." The listing includes "[a] comatose state that lasts for more than 3 days" without requiring any lasting effect of that comatose state. MCL 257.58c(f). Thus, for example, a person who is rendered comatose for eighty hours, but who then revives without any continuing disability has suffered a "serious impairment of a body function" under the statute.

---

[2] As noted, this canon is usually applied in situations where a broad term follows a series of specific items. Nonetheless, the canon seems applicable here; if the "including, but not limited to" language of the statute were deleted and a broad term like "other injuries" were added to the listing, we would discern no difference in the statutory meaning.

We further note that the definitional listing includes "loss of [the] use of a limb." MCL 257.58c(a). The statute here does not specify the length of time such a loss must be suffered. On the one hand, it does not require that the loss of use be long-lasting or permanent. On the other, it does not specify that any lost use, for no matter how short a time, is sufficient.

In light of these considerations, we conclude that the trial court properly decided that the injury to the officer's left leg constituted a "serious impairment of a body function" under the statute. The officer lost the use of that limb almost completely for several weeks while he was on crutches and, to a more limited extent, during the several months that he was unable to return to work. This impairment was certainly less extreme than what would have been the case had the officer been rendered comatose. But it was far more long-lasting than the three days that would have been sufficient had a comatose state resulted. We conclude that this lesser impairment, itself within the statutory list, suffered for a much greater time than required for a more serious injury within the list, is properly considered as falling within the "serious impairment" category.

With respect to the officer's broken neck bone, we note that the statutory listing includes "a skull fracture or other serious bone fracture." MCL 257.58c(h). Further, hemorrhages or hematomas that are "subdural" are listed as constituting serious impairments. MCL 257.58c(i). Such a "subdural" injury is one that is "[l]ocated or occurring beneath the dura mater" which is, in turn, defined as the membrane "that covers the brain and the spinal cord." *The American Heritage Dictionary* (2d college ed, 1982). Thus, the statutory listing considers any hemorrhage or hematoma that

involves the spinal cord to be a "serious impairment." We conclude that this same special status should be afforded bone fractures if they involve the spinal column; any vertebral bone fracture is properly considered a "serious impairment of a body function" under the statute.[3]

In sum, the injuries to the officer's leg and spinal cord were both properly considered "serious impairment[s] of a body function" under MCL 257.58c. Accordingly, we affirm defendant's conviction under MCL 750.81d(3).

### 2. DEPARTURE SENTENCE

Scoring of the sentencing guidelines in this case resulted in a recommended minimum sentence range of 50 to 200 months. Defendant does not contest that scoring. However, the trial court departed upward from the guidelines sentence range and sentenced defendant to a minimum term of 240 months. Defendant contends that the trial court did so improperly by relying on characteristics already considered in computing the guidelines sentence range.

Whether a trial court appropriately articulated a substantial and compelling reason for a departure from the sentencing guidelines is reviewed for an abuse of discretion. *People v Babcock*, 469 Mich 247, 265-266;

---

[3] We note defendant's argument that the fracture itself was not, fortunately, as "serious" as it could well have been according to the officer's treating physician. Defendant argues that, therefore, the officer's fracture was not "a skull fracture or other serious bone fracture" under MCL 257.58c(h). We disagree. Any skull fracture, regardless of its seriousness, qualifies and, for the reasons stated above, we conclude that, similarly, any bone fracture within the spinal column qualifies, regardless of its seriousness. Further, we note that there is testimony in the record that the bone fracture could result in continuing problems for the officer in the future.

666 NW2d 231 (2003). With respect to the argument defendant raises here, MCL 769.34(3)(b) provides that a court "shall not base a departure on an offense characteristic or offender characteristic already taken into account in determining the appropriate sentencing range unless the court finds . . . that the characteristic has been given inadequate . . . weight."

We do not conclude that the trial court abused its discretion. None of the offense variables scored against defendant took into account the trial court's finding that defendant showed a "complete disregard" for the officer's life. While points were scored under offense variable 7 (OV 7) on the basis of a finding that defendant treated the officer with "terrorism, sadism, torture, or excessive brutality," that does not amount to consideration of defendant's having a complete disregard for the officer's life. Further, defendant makes no argument that the offense variable scoring considered in any fashion whatsoever the thirty-four misconduct citations he received previously while in prison. We conclude that there were substantial and compelling reasons for the departure sentence imposed against defendant.

We affirm.