# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
February 14, 2017

Plaintiff-Appellee,

v

No. 330414
Ingham Circuit Court

KRISTJAN PREKAJ,

LC No. 15-000826-AR

Defendant-Appellant.

Before: RONAYNE KRAUSE, P.J., and O'CONNELL and METER, JJ.

PER CURIAM.

Defendant, Kristjan Prekaj, appeals by leave granted[1] the district court's order requiring him to pay a total of $159,041.10 in restitution. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

The criminal complaint alleged that Prekaj and the victim got into a heated argument at a party. After the victim left the party, the argument continued. The victim was attempting to leave the confrontation and Prekaj struck the victim in the jaw, which caused the victim to fall face-down on the pavement. The victim suffered a broken jaw and broken teeth.

During a restitution hearing, the victim testified that doctors were not able to surgically repair the damage to his jaw because the break was on the hinge plate. As a result, he constantly experienced pain and woke frequently at night. He also sustained damage to 12 teeth, which required repairs, including root canals, extractions, implants, and crowns. The victim's father, a registered nurse, testified about his out-of-pocket expenses. The victim also presented a letter from his dentist, which stated that the victim will require life-long crown replacements costing $9,000 about every five years. A mortality rates table provided that the victim would likely require 11 such replacements during his lifetime.

---

[1] *People v Prekaj*, unpublished order of the Court of Appeals, entered January 5, 2016 (Docket No. 330414).

Ultimately, the district court found that the total expenses of the victim's current treatments were $22,663.70, and that the victim would incur future medical expenses of about $99,000, which it reduced to a present value of $30,350. The district court also found that the victim suffered a serious impairment of a bodily function and trebled the victim's restitution.

## II. STANDARDS OF REVIEW

This Court reviews de novo the proper interpretation and application of sentencing statutes, including statutes that authorize restitution. *People v McKinley*, 496 Mich 410, 414-415; 852 NW2d 770 (2014). We review the trial court's findings of fact for clear error and its ultimate restitution award for an abuse of discretion. *People v Corbin*, 312 Mich App 352, 361; 880 NW2d 2 (2015). The trial court's findings are clearly erroneous if, after we have reviewed the entire record, we are definitely and firmly convinced that it made a mistake. *People v Coomer*, 245 Mich App 206, 219; 627 NW2d 612 (2001).

## III. WITHDRAWAL OF PLEA

Prekaj argues that the district court should have allowed him to withdraw his plea on the basis that he only consented to $20,000 in restitution. The record does not support Prekaj's argument.

Prekaj pleaded no contest to the allegations in the complaint pursuant to a plea agreement under which he would pay $20,000 at sentencing. The district court specifically noted that "some additional restitution . . . may be payable." Defense counsel stated his understanding of the agreement as follows: "[A]t the time of sentencing when we come back there'll be a restitution hearing to determine what the exact amount will be [Prekaj's] responsibility. But at the sentencing he's prepared to pay the $20,000." Accordingly, because Prekaj did not condition his plea on a restitution of only $20,000, he was not entitled to withdraw his plea.

## IV. AMOUNT OF RESTITUTION

The Crime Victim's Rights Act (CVRA), MCL 780.751 *et seq.*, provides that a sentencing court order shall require convicted defendants to "make full restitution to any victim of the defendant's conduct that gives rise to the conviction[.]" MCL 780.766(2). A sentencing court is authorized to order the defendant to pay "an amount equal to the reasonably determined cost of medical and related professional services and devices actually incurred and reasonably expected to be incurred relating to physical and psychological care." MCL 780.766(4)(a). This amount includes travel expenses that are the direct result of the defendant's criminal conduct. *People v Garrison*, 495 Mich 362, 374; 852 NW2d 45 (2014).

Prekaj first argues that the district court erred by ordering restitution for future dental work because the reward was impermissibly speculative. We disagree.

The prosecution has the burden of proving the exact amount of a victim's loss by a preponderance of evidence. MCL 780.767(4). There must be a direct causal relationship between the criminal conduct and the amount of restitution. *Corbin*, 321 Mich App at 368. The trial court must base its award on specific cost figures, and the award may not be unreasonably speculative. *Id*.

In this case, the victim's father testified that he was primarily responsible for the victim's medical expenses. The victim's father painstakingly documented his out-of-pocket expenses and mileage required for medical treatments. The victim's dentist also provided evidence that the victim would require dental treatments as a result of the damage to his teeth. The victim itemized the total amount of past, present, and future medical expenses he expected to incur. Regarding future expenses, the victim also submitted a letter from his dentist that provided that his crowns were expected to last five years with regular cleaning and dental care. The victim also presented evidence that, pursuant to Michigan's mortality table, he was expected to live another 56 years. These specific amounts were tailored to the victim's individual needs and life expectancy, and they were reasonably certain. We conclude that the trial court did not err in its calculation of restitution for the victim's serious dental injuries that resulted from the assault. The record supports each of its itemized findings.

Prekaj next argues that the trial court erred by ordering treble restitution. We disagree.

The trial court may order treble restitution if the victim suffers serious impairment of a bodily function. MCL 780.826(5). Serious impairment of a bodily function includes "[l]oss of a limb or use of a limb," MCL 780.826(5)(a), "[l]oss or substantial impairment of a bodily function," MCL 780.826(5)(d), and "[a] skull fracture or other serious bone fracture," MCL 780.826(5)(h). In the criminal context, a substantial impairment of a bodily function is broader than a serious impairment for civil no-fault purposes. See *People v Thomas*, 263 Mich App 70, 75-76; 687 NW2d 598 (2004) (construing MCL 750.81d(7)(c), which uses the same language as MCL 780.826(5)). A serious bone fracture includes those bone fractures that could result in continuing problems in the future. See *id*. at 78 n 3.

In this case, the victim testified that he suffered a bone fracture on the hinge plate of his jaw bone that doctors could not surgically repair, as well as damage to 12 of his teeth. As a result, the victim was in constant pain that caused him to frequently wake in the middle of the night, and he was unable to consume hot or cold beverages. Accordingly, the victim suffered both a serious bone fracture and an impaired ability to sleep and drink normally. We conclude that the district court properly determined that at least one of the criteria of MCL 780.826(5) applied.

We affirm.

/s/ Amy Ronayne Krause
/s/ Peter D. O'Connell
/s/ Patrick M. Meter

-3-