# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RICKY EDWARDS,

        Defendant-Appellant.

UNPUBLISHED
October 30, 2018

No. 337354
St. Clair Circuit Court
LC No. 16-002145-FH

Before: M. J. KELLY, P.J., and MARKEY and FORT HOOD, JJ.

PER CURIAM.

Defendant, Ricky Edwards, appeals as of right his jury trial convictions of operating while intoxicated, third offense, MCL 257.625(1) and (9), driving while license suspended, MCL 257.904, and lying to a police officer during a police investigation, MCL 750.479c(2)(c). Edwards was sentenced, as a fourth habitual offender, MCL 769.12, to 2 to 20 years' imprisonment for the operating while intoxicated conviction, five days for the driving while license suspended conviction, and 2 to 15 years' imprisonment for the lying to a police officer during an investigation conviction.[1]  For the reasons stated herein, we affirm Edwards's convictions and sentences for operating while intoxicated and driving while license suspended, but we vacate his conviction for lying to a police officer during an investigation.

## I. BASIC FACTS

On August 13, 2016, Sergeant Lee Heighton of the Port Huron police department conducted a traffic stop because he believed Edwards had been speeding. During the course of the stop, Heighton noticed that Edwards's eyes were bloodshot and that he smelled of intoxicants, so he asked him how much he had to drink. Edwards responded that he had consumed six beers. Heighton then asked him to perform a number of field sobriety tests. He testified that Edwards failed each test. As a result, he placed Edwards under arrest for drunk

---

[1] Although Edwards's conviction of lying to a police officer during a police investigation is a two-year misdemeanor, see MCL 750.479c(2)(c), two-year misdemeanors are considered felonies under the habitual offender statutes, *People v Smith*, 423 Mich 427, 445; 378 NW2d 384 (1985). Accordingly, Edwards's sentence was properly enhanced under MCL 769.12.

driving. Edwards's blood alcohol count (BAC) was tested at 0.111. In addition, a gas station employee testified that Edwards's hit and damaged his parked truck when Edwards pulled into the parking lot, and surveillance video was admitted showing the accident. There was also testimony that, after being arrested for operating while intoxicated, Edwards spontaneously shouted that he had not been driving his truck and that someone named "Wallace" had been driving it.

## II. SUFFICIENCY OF THE EVIDENCE

### A. STANDARD OF REVIEW

Edwards argues that MCL 750.479c does not apply to him because he was not being investigated for a serious misdemeanor or a felony punishable by 4 years or more. See MCL 750.479c(2). Alternatively, he contends that there was insufficient evidence to convict him of lying to a police officer during a police investigation because Heighton never informed him that Heighton was conducting a criminal investigation. Questions of statutory interpretation are reviewed de novo. *People v Thomas*, 263 Mich App 70, 73; 687 NW2d 598 (2004). Additionally, challenges to the sufficiency of the evidence are reviewed de novo. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). Due process requires this Court to view the evidence in the light most favorable to the prosecution to determine whether a reasonable trier of fact could find each element of the crime established beyond a reasonable doubt. *People v Lundy*, 467 Mich 254, 257; 650 NW2d 332 (2002). It is the trier of fact's role to judge credibility and weigh the evidence. *People v Jackson*, 292 Mich App 583, 587; 808 NW2d 541 (2011).

### B. ANALYSIS

Edwards first argues that he cannot be convicted under MCL 750.479c because the crime he was investigated for was not a serious misdemeanor or a felony punishable by 4 years or more. In doing so, he improperly conflates the elements of the crime, which are set forth in MCL 750.479c(1), with the penalty for committing the crime, which is set forth in MCL 750.479c(2).

MCL 750.479c(2) provides:

(2) A person who violates this section is guilty of a crime as follows:

(a) If the crime being investigated is a serious misdemeanor, the person is guilty of a misdemeanor punishable by imprisonment for not more than 93 days or a fine of not more than $500.00.

* * *

(c) If the crime being investigated is a felony punishable by imprisonment for 4 years or more, the person is guilty of a misdemeanor punishable by imprisonment for not more than 2 years or a fine of not more than $5,000.00, or both.

-2-

The phrase "serious misdemeanor" is defined in relevant part as "[a] violation of . . . MCL 257.625, operating a vehicle while under the influence of or impaired by intoxicating liquor or a controlled substance, or with an unlawful blood alcohol content, if the violation involves an accident resulting in damage to another individual's property or physical injury or death to another individual." MCL 780.811(1)(a)(*xiv*); MCL 750.479c(5)(c).

Edwards contends that he was not investigated for a serious misdemeanor under MCL 750.479c(2)(a). In doing so, he ignores the evidence that he damaged a parked vehicle when he was driving under the influence of alcohol, which would satisfy the definition of "serious misdemeanor." Nevertheless, Edwards's conduct does not fall under MCL 750.479c(2)(a), because the crime investigated, operating while intoxicated, third offense, is a felony punishable by imprisonment for 4 years or more,[2] which means that he had to be sentenced under MCL 750.479c(2)(c). Therefore, if there is sufficient evidence to sustain his conviction under MCL 750.479c(1), then, because he was investigated for a felony punishable by more than 4 years, the trial court was required to sentence him under MCL 750.479c(2)(c). He is not immune to prosecution under MCL 750.479 simply because, at the time he was investigated, the police officer did not necessarily know what crime Edwards would eventually be charged with committing.

Next, Edwards argues that there was insufficient evidence to sustain his lying to a police officer during a criminal investigation conviction. Edwards was charged under MCL 750.479c(1)(b), which provides in relevant part:

> (1) Except as provided in this section, a person who is informed by a peace officer that he or she is conducting a criminal investigation shall not do any of the following:
>
> * * *
>
> (b) Knowingly and willfully make any statement to the peace officer that the person knows is false or misleading regarding a material fact in that criminal investigation.

The elements are: (1) a police officer informed the defendant that the officer was conducting a criminal investigation, (2) the defendant knowingly and willfully made a statement to the officer, (2) the defendant knew the statement was false or misleading, and (3) the statement related to a material fact in the crime the officer told the defendant he or she was investigating.

Edwards contends that there is insufficient evidence to satisfy the first element because he was never informed by Heighton that Heighton was conducting a criminal investigation. Resolution of this issue requires us to interpret the statute. In doing so, we must ascertain and give effect to the Legislature's intent. *Thomas*, 263 Mich App at 73. When discerning

---

[2] Under MCL 257.625(1) and (9), a defendant convicted of operating while intoxicated, third offense, is guilty of a felony punishable by at least 1 year and not more than 5 years.

legislative intent, this Court first looks to the language of the statute. *People v Borchard-Ruhland*, 460 Mich 278, 284; 597 NW2d 1 (1999). Further, we "must presume that every word has some meaning and should avoid any construction that would render any part of the statute surplusage or nugatory." *Id*. at 285. "The words of a statute provide the most reliable indicator of the Legislature's intent and should be interpreted on the basis of their ordinary meaning and the overall context in which they are used." *People v Flick*, 487 Mich 1, 10-11; 790 NW2d 295 (2010). "An undefined statutory word or phrase must be accorded its plain and ordinary meaning, unless the undefined word or phrase is a 'term of art' with a unique legal meaning." *Id*. at 11.

MCL 750.479c does not provide a definition for the verb "inform," so we employ its normal meaning, and we may consult a dictionary in construing its proper definition. See *People v Thompson*, 477 Mich 146, 151-152; 730 NW2d 708 (2007). *Merriam-Webster's Collegiate Dictionary* (11th ed) states that the verb "inform" means "to impart information or knowledge." In turn, "impart" means "to communicate the knowledge of : DISCLOSE." *Merriam-Webster's Collegiate Dictionary* (11th ed). Accordingly, under the plain language of the statute, in order to satisfy the first element, a police officer must communicate to the defendant that he or she is conducting a criminal investigation. Moreover, because only false or misleading statements regarding "that investigation," are prohibited under MCL 750.479c(1)(c), the officer must specifically tell the defendant what crime the officer is investigating.[3]

Here, the prosecution argues that the first element was satisfied because Edwards was aware that Heighton was investigating him for operating while intoxicated. The statute, however, does not make it a crime for a person who is aware that a police officer is conducting a criminal investigation to make a false or misleading statement about a material fact of that investigation. Instead, it expressly requires that the person be informed *by the police officer* that the officer is conducting a criminal investigation into a specific matter. Consequently, we reject the prosecution's interpretation of the statute because it would render nugatory the language "informed by a peace officer that he or she is conducting an investigation." See *Borchard-Ruhland*, 460 Mich at 284 (stating that we must avoid interpretations of a statute that would render parts of the statute surplusage or nugatory). We also find unavailing the prosecution's suggestion that Heighton informed Edwards that he was conducting a criminal investigation by placing Edwards under arrest for drunk driving. Although the statute does not require the police officer to use any "magic words" in order to inform the defendant about his investigation, it is plain that, at a minimum, he must tell the defendant that he is investigating a specific crime.

---

[3] In other words, if a police officer tells a person that he is investigating a murder and the person knowingly and willfully makes a false or misleading statement regarding a material fact in an unrelated carjacking, the statutory requirements would not be satisfied because the person would not have made a false or misleading statement with regard to the murder investigation, i.e., the crime that the officer informed him he was investigating.

In this case, there was no evidence that Heighton actually informed Edwards that he was conducting an investigation into whether Edwards was operating his vehicle while under the influence of alcohol. Instead, on cross-examination, Edwards's lawyer asked Heighton the following questions:

> *Q*. Okay. And you'd have to say at no time did you tell Mr. Edwards I am now going to be investigating you for whatever? You never said that, did you?
>
> *A*. I never formally had said that, no.
>
> *Q*. No. Okay.
>
> So, and it would be on the tape if you said to him that I'm informing you or I'm telling you I'm doing this investigation, it would be there and it's not there?
>
> *A*. Verbatim in that sense?
>
> *Q*. Verbatim, yes.
>
> *A*. Not verbatim, no.

On re-direct examination, Heighton again testified that he did not use specific words stating that he was investigating a certain type of crime. Finally, Edwards testified that Heighton never told him that he was conducting an investigation. Accordingly, in the absence of any evidence that Heighton did, in fact, inform Edwards that he was investigating Edwards for operating while intoxicated, there is insufficient evidence to sustain Edwards's conviction for lying to a police officer during an investigation. Consequently, we vacate that conviction.

## II. SELF-INCRIMINATION

### A. STANDARD OF REVIEW

Edwards next asserts that his constitutional right against self-incrimination was violated because he was not given his *Miranda*[4] rights before the Heighton questioned him. Alternatively, he contends that his lawyer provided ineffective assistance by failing to move to suppress his statements. Because these issues are unpreserved, we review them for clear error affecting Edwards's substantial rights. *People v Perry*, 317 Mich App 589, 600; 895 NW2d 216 (2016). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of

---

[4] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

the lower court proceedings." *Id*. Reversal is only warranted if the plain error leads to "the conviction of an actually innocent defendant," or where an error affects the "fairness, integrity, or public reputation" of the judicial proceeding. *Id*.

## B. ANALYSIS

The record reflects that during the traffic stop, Heighton asked Edwards if he had been drinking alcohol before driving, and Edwards answered that he had consumed six beers. On appeal, Edwards argues that his statement, i.e., that he had drank six beers, was inadmissible because Heighton did not first advise him of his *Miranda* rights.

A defendant who is arrested and subjected to custodial interrogation has a right to be warned "that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966). The key point in the analysis is that the defendant must be subjected to a *custodial interrogation*, meaning that he or she has been subjected to questioning after being taken into custody or significantly "deprived of his or her freedom of action in any significant way." *People v Steele*, 292 Mich App 308, 316; 806 NW2d 753 (2011). Whether an individual is in custody depends on the totality of the circumstances. *Id*. As a general rule, "a motorist detained for a routine traffic stop or investigative stop is ordinarily not in custody within the meaning of *Miranda*." *Id*. at 317. This is because, "unlike a stationhouse interrogation, the roadside questioning and detention of a driver in such a situation is brief and spontaneous," and typically does not involve a "police dominated" atmosphere that might make an individual believe that they are "completely at the mercy of the police." *People v Burton*, 252 Mich App 130, 139-140; 651 NW2d 143 (2002) (quotation marks omitted).

This case, however, does not constitute a typical roadside stop. Heighton testified that he was parked in a parking lot near the intersection of 24th Street and Beard when he observed Edwards's truck. Although the speed limit was 35 miles per hour, Heighton's radar gun indicated that Edwards was traveling 49 miles per hour. Without activating his lights, Heighton followed Edwards for a short distance before observing him turning into a Speedway parking lot. Edwards was already out of his truck and approximately halfway to the Speedway store before Heighton activated his emergency lights. Heighton exited his police cruiser and twice yelled for Edwards to return to vehicle. Although Edwards looked at him, he did not otherwise respond, and he entered the store. Heighton testified that he ran after Edwards and again ordered him to return to his truck. This time Edwards complied with the directive. Thus, the record reflects that Edwards was commanded by a police officer to return to his parked vehicle and answer questions without being given an explanation for what the officer suspected him of doing wrong. Further, Edwards's testimony at trial, made it clear that he did not believe Heighton was speaking to him when he first yelled at him to return to the truck, and he also testified that he was alarmed and confused when Heighton chased him into the store and yelled at him to return. Under these circumstances, we conclude that Edwards was arguably subjected to a custodial interrogation after he returned to his vehicle because he was significantly deprived of his freedom of action. See *Steele*, 292 Mich App at 316.

Yet, under the plain error standard it is not enough to simply point to an error. Instead, the defendant must establish that the error affected his or her substantial rights, i.e., that it was outcome determinative. Here, even if the statements had been suppressed, there is not a reasonable probability that the outcome of the trial would have been different. Even without Heighton's testimony that Edwards admitted to drinking six beers before driving, there was overwhelming evidence supporting his conviction for operating a motor vehicle while intoxicated. First, Heighton testified that Edwards smelled of intoxicants, slurred his speech, and had bloodshot eyes. Second, Heighton explained that Edwards failed all aspects of the field sobriety tests that were administered to him on the scene. Third, the prosecution introduced evidence in the form of testimony from a forensic scientist and a laboratory report that Edwards's BAC was .111, which is over the legal limit. Fourth, and most importantly, Edwards testified that around 20 to 25 minutes before he spoke to Heighton he had consumed two or three shots of cognac. He also stated that he had three beers in the hour and a half before he was detained by Heighton. Finally, Edwards admitted that he drove to the Speedway gas station. In light of this evidence, even if Heighton's statement that he had drank six beers before driving was suppressed, the outcome of the trial would not likely have been different. See *Carines*, 460 Mich at 763.

For the same reasons, even if Edwards's lawyer's performance fell below an objective standard of reasonableness when he did not move to suppress Edwards's statements, Edwards cannot establish that there is a reasonable probability that, but for his lawyer's deficient performance, the outcome of the trial would have been different. See *People v Gioglio (On Remand)*, 296 Mich App 12, 22; 815 NW2d 589 (2012), remanded for resentencing 493 Mich 864 (2012).

We affirm Edwards's convictions and sentences for operating while intoxicated and driving while license suspended, but vacate his conviction and sentence for lying to a police officer during an investigation.

/s/ Michael J. Kelly
/s/ Jane E. Markey
/s/ Karen M. Fort Hood