*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ANTHONY MICHAEL OWEN,

        Defendant-Appellant.

UNPUBLISHED
July 23, 2019

No. 339668
Ionia Circuit Court
LC No. 2015-031675-AR

Before: SAWYER, P.J., and BORRELLO and SHAPIRO, JJ.

PER CURIAM.

Defendant appeals by leave granted following his convictions for operating while visibly impaired, MCL 257.625(3); and being a concealed pistol licensee in possession of a firearm while intoxicated, MCL 28.425k(2). We reverse and remand.

This case arose from a deputy sheriff's traffic stop of defendant for allegedly driving 43 miles per hour in a 25-mile-per-hour zone in the Village of Saranac. The deputy required defendant to perform a series of field sobriety tests and gave him a preliminary breath test, which defendant failed. The deputy placed defendant under arrest. Defendant moved to suppress all evidence obtained during the traffic stop and for dismissal of the charges against him on the ground that his constitutional rights under Const 1963, art 1, § 11 and US Const, Am IV, were violated by the deputy who had no lawful basis for stopping defendant because the speed limit on the unposted road was 55 miles per hour pursuant to the statutory general speed limit under MCL 256.628(1). The district court initially denied defendant's motion, and he appealed to the circuit court, which remanded for an evidentiary hearing that resulted in the district court's grant of defendant's motion and plaintiff's appeal to the circuit court. The circuit court affirmed the district court's decision, and plaintiff moved for reconsideration, which led to the circuit court remanding for another evidentiary hearing that established certain facts. Upon reconsideration of its previous ruling, the circuit court reversed itself and vacated the district court's decision. Defendant entered a conditional guilty plea and sought leave to appeal the circuit court's decision. This Court denied defendant leave to appeal, and defendant sought leave to appeal to our Supreme Court, which in lieu of granting leave remanded the case to this Court for consideration as on leave granted. *People v Owen*, ___ Mich ___; 917 NW2d 79 (2018).

-1-

Defendant first argues that the circuit court erred by vacating the district court's suppression and dismissal ruling because the deputy unlawfully stopped defendant in violation of his constitutional rights and the circuit court incorrectly ruled that the deputy made a reasonable mistake of the law despite lacking an articulable and reasonable suspicion that defendant violated any law. We agree.

"A trial court's findings of fact on a motion to suppress are reviewed for clear error, while the ultimate decision on the motion is reviewed de novo." *People v Hrlic*, 277 Mich App 260, 262-263; 744 NW2d 221 (2007). "Clear error exists if the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Johnson*, 466 Mich 491, 497-498; 647 NW2d 480 (2002). This Court reviews de novo as a question of law matters of statutory interpretation. *People v Thomas*, 263 Mich App 70, 73; 687 NW2d 598 (2004).

The Fourth Amendment of the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. [US Const, Am IV.]

In *People v Jones*, 260 Mich App 424, 428-429; 678 NW2d 627 (2004), this Court explained:

> The Fourth Amendment of the United States Constitution and its counterpart in the Michigan Constitution guarantee the right of persons to be secure against unreasonable searches and seizures.
>
> * * *
>
> An investigatory stop, which is limited to a brief and nonintrusive detention, constitutes a Fourth Amendment seizure. In order to effectuate a valid traffic stop, a police officer must have an articulable and reasonable suspicion that a vehicle or one of its occupants is subject to seizure for a violation of law. The reasonableness of an officer's suspicion is determined on a case-by-case basis in light of the totality of the facts and circumstances and specific reasonable inferences he is entitled to draw from the facts in light of his experience. [Quotation marks and citations omitted.]

In assessing the protections created by the Fourth Amendment, the United States Supreme Court has "long held that the 'touchstone of the Fourth Amendment is reasonableness.' " *Ohio v Robinette*, 519 US 33, 39; 117 S Ct 417; 136 L Ed 2d 347 (1996) (citation omitted). Reasonableness is measured by examining the totality of the circumstances. *Id*. Because of " 'endless variations in the facts and circumstances' " implicating the Fourth Amendment, reasonableness is a fact-intensive inquiry that does not lend itself to resolution through the application of bright-line rules. *Id*., quoting *Florida v Royer*, 460 US 491, 506; 103 S Ct 1319; 75 L Ed 2d 229 (1983). A defendant may not be detained unless reasonable, objective grounds exist for doing so. *Royer*, 460 US at 498. Under *Terry v Ohio*, 392 US 1, 20;

88 S Ct 1868; 20 L Ed 2d 889 (1968), a search or seizure's reasonableness depends on "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place."

"A traffic stop for a suspected violation of law is a 'seizure' of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment." *Heien v North Carolina*, 574 US 54, ___; 135 S Ct 530, 536; 190 L Ed 2d 475 (2014) (quotation marks and citations omitted). To be a lawful search and seizure, law enforcement must exercise "reasonableness." *People v Beuschlein*, 245 Mich App 744, 749; 630 NW2d 921 (2001). The Fourth Amendment permits investigative stops "when a law enforcement officer has a particularized and objective basis for suspecting the particular person stopped" broke the law. *Navarette v California*, 572 US 393, 396; 134 S Ct 1683, 1687; 188 L Ed 2d 680 (2014) (quotation marks and citation omitted). This basis for making a stop is known as reasonable suspicion. See *id*.

In *Heien*, the United States Supreme Court explained that a "[r]easonable suspicion arises from the combination of an officer's understanding of the facts and his understanding of the relevant law." *Heien*, 574 US at ___; 135 S Ct at 536. A violation of the Fourth Amendment requires "suppression of the unlawfully obtained evidence." *People v Cartwright*, 454 Mich 550, 558; 563 NW2d 208 (1997). This is known as the exclusionary rule. See *Mapp v Ohio*, 367 US 643, 656; 81 S Ct 1684; 6 L Ed 2d 1081 (1961). "The goal of the exclusionary rule . . . is to deter police misconduct." *People v Goldston*, 470 Mich 523, 538; 682 NW2d 479 (2004). Therefore, "the exclusionary rule should be employed on a case-by-case basis and only where exclusion would further the purpose of deterring police misconduct." *Id*. at 531. This Court has held that courts must suppress evidence otherwise lawfully seized during a traffic stop if the law enforcement officer lacked a reasonable suspicion to justify the stop. *People v Dillon*, 296 Mich App 506, 509; 822 NW2d 611 (2012).

In Michigan, speed limits are statutorily defined under the Motor Vehicle Code, MCL 257.601 *et seq*. At times relevant to this case, MCL 257.627[1] provided in relevant part:

> (2) Except in those instances where a lower speed is specified in this chapter or the speed is unsafe pursuant to subsection (1), it is prima facie lawful for the operator of a vehicle to operate that vehicle at a speed not exceeding the following, except when this speed would be unsafe:

> (a) 25 miles per hour on all highways in a business district.

> * * *

> (d) 25 miles per hour on a highway segment with 60 or more vehicular access points within 1/2 mile.

---

[1] MCL 257.627 was amended in 2012 by Public Act 252 and again in 2016 by Public Act 445.

(e)   35 miles per hour on a highway segment with not less than 45 vehicular access points but no more than 59 vehicular access points within 1/2 mile.

(f)   45 miles per hour on a highway segment with not less than 30 vehicular access points but no more than 44 vehicular access points within 1/2 mile.

(3)   It is prima facie unlawful for a person to exceed the speed limits prescribed in subsection (2), except as provided in section 629.

* * *

(11)   Nothing in this section prevents the establishment of an absolute speed limit pursuant to section 628.  Subject to subsection (1), an absolute speed limit established pursuant to section 628 supersedes a prima facie speed limit established pursuant to this section.  [Footnote omitted.]

At times relevant to this case, MCL 257.628 provided in relevant part:

(1)   . . . The maximum speed limit on all highways or parts of highways upon which a maximum speed limit is not otherwise fixed under this act is 55 miles per hour, which shall be known and may be referred to as the "general speed limit".

The Village of Saranac could adopt traffic regulations that the Motor Vehicle Code authorized, but before such became enforceable, the ordinances or regulations were required to be posted on signs that gave notice to ordinarily observant persons of the local traffic regulations. See former MCL 257.606(1)(*l*) and (3).[2]  At times relevant to this case, effective November 9, 2006, MCL 257.629 provided in relevant part:[3]

(1)   Local authorities may establish or increase the prima facie speed limits on highways under their jurisdiction subject to the following limitations:

* * *

(c)   Local authorities may establish prima facie lawful speed limits on highways outside of business districts that are consistent with the limits established under section 627(2).

If Saranac desired to modify the statutorily defined speed limits required under MCL 257.627, it had to follow the procedures set forth in MCL 257.627 and MCL 257.628 for lawful

---

[2] MCL 257.606 was amended in 2016 by Public Act 448.

[3] MCL 257.629 was repealed during 2016 by Public Act 445, and the repeal became effective January 5, 2017.

modification of speed limits. Any modification of the statutorily defined speed limits had to be a matter of public record under MCL 257.628(6), which required local authorities like villages to have a public record of traffic control orders that establish the legal and enforceable speed limit for the highway segment described in the document and any modification of the statutorily defined speed limits. MCL 257.628(5) and (6) generally required posting of speed limits that modified the statutorily defined speed limits.

In this case, witnesses' testimonies established that Saranac had no public record of any modification of the statutorily defined speed limits under MCL 257.627. The evidence also established that the road where the traffic stop occurred lacked any speed limit signage within and without Saranac's village boundary visible to drivers traveling southbound. Under MCL 257.628(1), the road's speed limit was 55 miles per hour at the time of the deputy's traffic stop of defendant. Testimony by a Michigan State Police lieutenant established that the enforceable speed limit on the road was and remained 55 miles per hour at times relevant to this case. Pursuant to MCL 257.627, the statutorily defined speed limit on the road, if properly posted, would have been 45 miles per hour, but because the village neglected to post the speed limit, the statutory general speed limit applied. The record indicates that defendant drove 43 miles per hour southbound on the road. Accordingly, defendant lawfully traveled on the road the night of the traffic stop. The deputy testified that he stopped defendant because he mistakenly believed that the speed limit on the road was 25 miles per hour.

This case requires determination whether, under the totality of the circumstances, the deputy had an articulable and reasonable suspicion that a vehicle or one of its occupants was subject to seizure for a violation of law. To determine the reasonableness of the deputy's action, we consider from what source of law he gained his purported reasonable-but-mistaken understanding. At the time of the stop, Michigan's Vehicle Code did not permit an officer to stop a vehicle on an unposted road for exceeding the speed limit based on a belief that the road had a 25-mile-per-hour speed limit. Nor could an officer reasonably infer from the Motor Vehicle Code that he could stop a vehicle on an unposted road for exceeding the speed limit based on such a belief. Under MCL 257.628(1), because the road had no posted speed limit sign, the speed limit was 55 miles per hour. A reasonably competent law enforcement officer should have known that.

The record reflects that the deputy in this case admitted that he knew that the speed limit was not posted on the road for vehicles traveling south. He admitted that no speed limit was posted where he stopped defendant and that he knew that at that location because it was not posted that the speed limit was 55 miles per hour. The deputy also admitted that no traffic control device or sign told motorists traveling southbound on the road the speed limit a motorist had to observe. The record indicates that the deputy merely believed that the speed limit on the road was 25 miles per hour because 25-mile-per-hour speed limits were posted on some streets entering Saranac. Evidence established that the village had no sign posted anywhere that provided that the village had a general village speed limit by ordinance or regulation. Since 2006, under the Motor Vehicle Code, villages could not have blanket village-wide 25-mile-per-hour speed limits within their boundaries.

Michigan's Supreme Court long ago opined that officers of the law must act within the law. *People v Halveksz*, 215 Mich 136, 138; 183 NW 752 (1921). Further, it is axiomatic that reasonably competent law enforcement officers should know the law governing their conduct.

See generally *Harlow v Fitzgerald*, 457 US 800, 818-819; 102 S Ct 2727; 73 L Ed 2d 396 (1982). Although the deputy in this case was not required to be perfect, his mistake of law still had to be one of a reasonable law enforcement officer. See *Heien*, 574 US ___; 135 S Ct at 536. Even the deputy in this case admitted that an officer enforcing a speed limit should know the speed limit. The record in this case, however, establishes that the deputy failed to know the basic Michigan law provided under the Motor Vehicle Code, the very law he was tasked to enforce.

The deputy in this case did not make a reasonable mistake of law because the Motor Vehicle Code since 2006 established the rule of law regarding speed limits throughout Michigan. Under the Motor Vehicle Code, unposted roads were 55 miles per hour. See MCL 257.628(1). The deputy's testimony does not reflect a reasonable interpretation of the Motor Vehicle Code or even a plausible understanding of the applicable law. The record indicates that he never considered the Motor Vehicle Code at all. We conclude that the deputy did not have an objectively reasonable belief that probable cause existed to stop defendant because the totality of the circumstances established that he made an unreasonable mistake of law merely based on an unsupported hunch that the speed limit was 25 miles per hour because other roads were posted elsewhere in the village with that speed limit. However, since 2006, nearly 10 years before the traffic stop, the Motor Vehicle Code repealed blanket village-wide speed limits. The circuit court erred because it essentially held that a law enforcement officer's unreasonable ignorance of the law was equivalent to a reasonable mistake of the law.

Therefore, we hold that the circuit court erred by vacating the district court's suppression and dismissal ruling because analysis of the totality of the circumstances in this case establishes that the deputy lacked an articulable and reasonable basis for making the traffic stop. The deputy's subjective mistaken belief that the speed limit was 25 miles per hour lacked objective reasonableness. Therefore, the traffic stop was not lawful and it violated defendant's constitutional rights requiring suppression of the evidence obtained by the unlawful stop.

Defendant also argues without citation to any authority that the circuit court erred by reconsidering its ruling without first making a finding that palpable error existed. We disagree.

We review for an abuse of discretion a lower court's decision on a motion for reconsideration. *Woods v SLB Property Mgt, LLC*, 277 Mich App 622, 629; 750 NW2d 228 (2008). We review de novo the proper interpretation and application of statutes and court rules. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008).

In *People v Walters*, 266 Mich App 341, 351-352; 700 NW2d 424 (2005), this Court explained that a circuit court sitting as an appellate court had no obligation to make a palpable error finding before granting a motion for reconsideration. Therefore, under *Walters*, the circuit court in this case had no obligation to make a palpable error finding before granting plaintiff's motion for reconsideration.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ David H. Sawyer
/s/ Stephen L. Borrello
/s/ Douglas B. Shapiro