*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JERMAINE ABRON,

        Defendant-Appellant.

UNPUBLISHED
June 13, 2024

No. 364204
Kent Circuit Court
LC No. 20-003446-FC

Before: RICK, P.J., and JANSEN and LETICA, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of felony murder, MCL 750.316(1)(b), and first-degree child abuse, MCL 750.136b(2). The trial court sentenced defendant to imprisonment for life without the possibility of parole for felony-murder and 180 months to 50 years' imprisonment for first-degree child abuse. We affirm.[1]

## I. BASIC FACTS

This case arose from an incident when the victim's mother left the victim in the temporary care of her boyfriend, defendant, while she briefly went shopping at a nearby store. The victim was only eight months old. When the mother returned, defendant said something about dropping the victim in his crib. The mother checked on the victim but did not notice anything abnormal. After the victim remained quiet for an abnormally long period, the mother checked on him again and he was unresponsive. She called 911, and medical personal unsuccessfully attempted to revive the victim; he was pronounced dead shortly thereafter. Police officers arrested defendant, and the

---

[1] This Court previously denied defendant's motion to remand "without prejudice to a case call panel of this Court determining that remand is necessary once the case is submitted on a session calendar." *People v Abron*, unpublished order of the Court of Appeals, entered March 8, 2024 (Docket No. 364204). Finding no merit in defendant's arguments on appeal, there is no need for a remand and we need not discuss this issue further.

prosecution charged defendant with felony murder and first-degree child abuse. After a three-day trial, the jury convicted defendant on both charges, and he was sentenced. Defendant now appeals.

## II. ANALYSIS

## A. JURY INSTRUCTIONS

Defendant first argues that the trial court violated his due-process rights by refusing to read his requested jury instruction for second-degree child abuse on the basis of a reckless-act theory. We disagree.

Issues of law arising from jury instructions are reviewed de novo on appeal, but a trial court's determination whether an instruction was applicable to the facts of the case is reviewed for an abuse of discretion. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006). "A trial court abuses its discretion when it selects an outcome that was not in the range of reasonable and principled outcomes." *People v Roberts*, 292 Mich App 492, 503; 808 NW2d 290 (2011). Jury instructions are to be read as a whole rather than extracted piecemeal to establish error. *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011).

## 1. LESSER INCLUDED OFFENSE

Criminal defendants are entitled to have a "properly instructed jury consider the evidence against him." *People v Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002). A trial judge must instruct the jury as to the applicable law, and fully and fairly present the case to the jury in an understandable manner. *People v McGhee*, 268 Mich App 600, 606; 709 NW2d 595 (2005). "The instructions must include all elements of the charged offenses and any material issues, defenses, and theories if supported by the evidence." *Id*. Upon indictment for an offense that consists of different degrees, the jury or judge in a trial without a jury may find the defendant guilty of a degree of that offense inferior to the offense charged in the indictment, or of an attempt to commit that offense. MCL 768.32(1). As such, "[a] requested instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that *is not part of the lesser included offense* and a rational view of the evidence would support it." *People v Smith*, 478 Mich 64, 69; 731 NW2d 411 (2007) (emphasis added, quotation marks and citation omitted). To be supported by a rational view of the evidence, a lesser included offense must be justified by the evidence. *People v Steele*, 429 Mich 13, 20; 412 NW2d 206 (1987). Proof on an element differentiating the two crimes must be sufficiently in dispute to allow the jury to consistently find the defendant not guilty of the charged offense but guilty of the lesser offense. *Id*.

In summary, under MCL 768.32(1), the rule of lesser included offenses requires that the trial court first determine whether an offense is necessarily included, which requires the trial court to compare the elements of the offenses. *People v Jones*, 497 Mich 155, 164; 860 NW2d 112 (2014). If the offense is necessarily included, then the trial court must then determine whether an instruction is warranted by examining whether the greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence supports the instruction. *Id*.

At trial, defendant requested that the trial court read two instructions for the lesser included

offense of second-degree child abuse to the jury: M Crim JI 17.20 (reckless act or omission) and M Crim JI 17.20a (act likely to cause serious harm). The trial court granted defendant's request regarding M Crim JI 17.20a, but not M Crim JI 17.20. The trial court stated that the only difference between the charged offense of first-degree child abuse and second-degree child abuse on the basis of a theory of recklessness was defendant's state of mind. "A person is guilty of child abuse in the first degree if the person *knowingly or intentionally* causes serious physical harm or serious mental harm to a child." MCL 750.136b(2) (emphasis added). By contrast, second-degree child abuse only requires that a defendant engaged in a reckless act. MCL 750.136b(3)(a); M Crim JI 17.20.

Black's Law Dictionary defines "reckless" as "the creation of a substantial and unjustifiable risk of harm to others" and a "conscious (and sometimes deliberate) disregard for or indifference to that risk." *Black's Law Dictionary* (11th ed).[2] Reckless conduct goes beyond mere negligence and constitutes a "gross deviation" from what a reasonable person would do. *Id*. Reckless acts that cause serious harm differ from acts that knowingly and intentionally cause serious harm. See MCL 750.136(3)(b) and (c). Black's Law Dictionary defines "intentional" as something "[d]one with the aim of carrying out the act." *Black's Law Dictionary* (11th ed). It similarly defines knowing as "[h]aving or showing awareness or understanding; well-informed" and "deliberate; conscious." *Black's Law Dictionary* (11th ed). According to these definitions, knowing and intentional constitute a step beyond mere recklessness. As such, first-degree child abuse requires the jury to find a disputed factual element that was not part of the lesser included offense. See *Smith*, 478 Mich at 69. Therefore, whether the trial court erred by excluding the jury instruction for second-degree child abuse on the basis of a recklessness theory hinges on whether a rational view of the evidence would support the lesser offense instruction. See *Jones*, 497 Mich at 164.

The trial court stated that, according to the evidence, defendant's actions were intentional, not reckless. The trial court relied on defendant's physical demonstration and statements during the police interview, during which he showed the officers how he took the victim and slammed his head on hard surfaces, including a table, more than once. For these reasons, the trial court refused to provide defendant's proposed jury instruction.

As the only firsthand witness, defendant's account of the victim's death was significant to this case's outcome. Defendant provided three different accounts of events leading up to this tragic event. Defendant initially told the victim's mother that he dropped the victim in his crib. Defendant then stated that he dropped the victim on the carpeted floor. Defendant blamed the victim's fall on an injury to his wrist that caused him to drop the victim. Lastly, during his interview with police officers, defendant stated that he hit the victim against hard objects and dropped the victim multiple times. The first two instances support the existence of reckless conduct. This strongly suggests that defendant willfully and wantonly disregarded a substantial and unjustifiable risk. See *Black's Law Dictionary* (11th ed).

As for defendant's third account of events, defendant stated that he swung the victim around by his feet, causing the victim to hit his head; repeatedly dropped him on the floor; and

---

[2] When terms are not expressly defined by a statute, a court may consult dictionary definitions. See *People v Thomas*, 263 Mich App 70, 73; 687 NW2d 598 (2004).

twice banged the victim's head against the table. Even if some of defendant's acts could be defined as reckless, the fact that defendant injured the victim multiple times strongly supported the trial court's conclusion that defendant's actions went beyond mere recklessness. Moreover, the manner in which defendant demonstrated to police officers how he twice banged the victim's head against the table also indicates intentional or knowing conduct. Therefore, defendant's third account betrays a state of mind beyond mere recklessness. The key question is which of the three accounts was most supported by a rational view of the evidence.

The testimony from several witnesses show that, before his death, the victim had abnormal bruising on his face and nose, indicating that he had been hit hard by something. Most convincing was the coroner's testimony that the victim had bruising on his forehead, contusions on his midforehead, bruising on the left side of his scalp, a linear fracture of the skull, and brain damage. The coroner opined that the victim's injuries were deliberate, the cause of death was blunt head injury, and the manner of death was homicide. Therefore, on the basis of this additional evidence, defendant's third account of events is most likely correct and his conduct was more than reckless. Consequently, the trial court did not err by refusing to read the proposed reckless-act second-degree child abuse instruction to the jury.

## 2. HARMLESS ERROR

The failure to instruct on a lesser included offense can constitute a harmless error. *Gillis*, 474 Mich at 105, 140 n 18. Regarding harmless errors, MCR 2.613(A) states:

> An error in the admission or the exclusion of evidence, an error in a ruling or order, or an error or defect in anything done or omitted by the court or by the parties is not ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice.

A preserved, nonconstitutional error only supplies a ground for reversal if, after an examination of the entire case, it shall affirmatively appear that it is more probable than not that the trial court's error was outcome-determinative. *People v Cornell*, 466 Mich 335, 363-364; 646 NW2d 127 (2002). An error was outcome-determinative if it undermined the verdict's reliability and the defendant bears the burden of showing that it was more probable than not that the verdict's reliability was undermined. *Id*. at 364. The verdict's reliability is undermined if, considering the entire case, a lesser included offense instruction that was clearly supported by substantial evidence was not given. *Id*. at 365. In other words, "[t]he verdict is undermined when the evidence clearly supports the requested lesser included instruction that was not given to the jury." *People v Mitchell*, 301 Mich App 282, 286; 835 NW2d 615 (2013). If reversal is required, the appropriate remedy is to remand for entry of a conviction on the lesser included offense and for resentencing, with the prosecutor having the option to retry the defendant on the charge for which he was convicted. *People v Gridiron*, 185 Mich App 395, 404; 460 NW2d 908 (1990).

For reasons already stated in this opinion, the lesser included offense was not clearly supported by substantial evidence because defendant's actions indicated more than mere recklessness. See *Cornell*, 466 Mich at 365. Also, defendant has offered little to no argument to meet his burden of proof that the trial court's alleged error was outcome-determinative. See *People*

*v Propp*, 340 Mich App 652, 661-662; 987 NW2d 888 (2022).  Therefore, defendant has failed to show that any error committed by the trial court would not have been harmless and he is not entitled to a remand.

## B.  THE PROSECUTOR'S MISSTATEMENT

Defendant next argues that the prosecutor's misstatement on the record violated his due-process right to a fair trial.  We disagree.

"In order to preserve an issue of prosecutorial misconduct, a defendant must contemporaneously object and request a curative instruction."  *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010).  Defense counsel failed to do so; therefore, this issue is unpreserved.  "This Court reviews unpreserved constitutional errors for plain error affecting substantial rights."  *People v Gibbs*, 299 Mich App 473, 482; 830 NW2d 821 (2013) (quotation marks and citation omitted).  "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights."  *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).  If a defendant satisfies all three elements, the Court may only reverse when the error seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence.  *Id*. at 763.  An unpreserved claim of prosecutorial misconduct will not warrant relief unless the prejudicial effect was so great that it could not have been cured by a curative instruction.  See *People v Stanaway*, 446 Mich 643, 687; 521 NW2d 557 (1994).

The test of prosecutorial misconduct is whether a defendant was denied his or her constitutional right to a fair and impartial trial.  *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008).  "A prosecutor has committed misconduct if the prosecutor abandoned his or her responsibility to seek justice and, in doing so, denied the defendant a fair and impartial trial."  *People v Lane*, 308 Mich App 38, 62; 862 NW2d 446 (2014).  A prosecutor may not argue facts unsupported by the evidence.  *Stanaway*, 446 Mich at 686.  Nevertheless, "[p]rosecutors are typically afforded great latitude regarding their arguments and conduct at trial."  *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008).  A prosecutor may argue the evidence and all reasonable inferences arising from it as they relate to his or her theory of the case.  *Id*.  Therefore, prosecutors need not confine their arguments to the "blandest possible terms."  *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007).  "Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context."  *Id*. at 64.  Moreover, "[a] prosecutor's comments are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial."  *Id*.  Generally, curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements and jurors are presumed to follow the instructions.  *Unger*, 278 Mich App at 235.

Defendant argues that the prosecution violated his due-process rights when it made the unsupported assertion that defendant lied to the police officers about his name when they first arrived at the victim's mother's apartment.  Although the prosecutor's statement regarding defendant's alleged dishonesty was likely inappropriate, it did not violate defendant's right to a fair trial.

In both his opening statement and closing argument, the prosecutor stated that defendant

misinformed the police officers about his name and that he left headphones in his ears when the officers were trying to talk with him. The prosecutor's statement in his opening statement should not be construed as prosecutorial misconduct because "[t]he purpose of an opening statement is to tell the jury what the advocate proposes to show." *People v Moss*, 70 Mich App 18, 32; 245 NW2d 389 (1976), aff'd 405 Mich 38 (1979).[3] The prosecution's questions to police officers at trial suggested that it anticipated that evidence would be elicited showing that defendant lied to police officers about his name. By contrast, when the prosecutor made the same allegation during closing argument, this was problematic because no evidence had been submitted or elicited at trial to indicate that defendant had lied. Therefore, the prosecutor's statement appears to be a misstatement of the record. Regardless, the prosecutor's misstatement did not harm defendant's substantial rights.

As a worst-case scenario, the prosecutor's misstatement would have given the jurors the impression that defendant was dishonest. However, for reasons already stated, by the trial's end, the jury would have likely believed that defendant intentionally harmed an eight-month-old child. This was established by the simple fact that the jury convicted defendant of first-degree child abuse, which required proof that defendant knowingly or intentionally caused the victim serious harm. It is almost incomprehensible that merely depicting defendant as a liar would have made him appear worse to the jury than he already appeared. Even if the prosecutor's misstatement violated defendant's substantial rights, the trial court's curative instruction to the jury would likely have cured any harm caused by the violation. The trial court warned the jury that the lawyers' statements, arguments, and commentary were only means to clarify the evidence and pertinent legal theories—lawyers' statements did not constitute evidence. For these reasons, defendant has failed to establish that the prosecutor's misstatement violated his due-process rights.

## C. THE VICTIM'S PHOTOGRAPH

Lastly, defendant argues that the trial court abused its discretion when it admitted a precrime photograph of the victim into evidence. We disagree.

"The decision whether evidence is admissible is within the trial court's discretion and should only be reversed where there is a clear abuse of discretion." *People v Starr*, 457 Mich 490, 494; 577 NW2d 673 (1998). "A trial court abuses its discretion when it chooses an outcome falling outside the range of principled outcomes." *People v Watkins*, 491 Mich 450, 467; 818 NW2d 296 (2012).

---

[3] Decisions published by this Court before November 1, 1990, are not binding, MCR 7.215(J); however, they remain precedent and are entitled to greater deference than unpublished cases. *People v Hawkins*, ___ Mich App ___, ___ n 3; ___ NW3d ___ (2023) (Docket No. 365076); slip op at 3 n 3.

Relevant evidence is generally admissible and irrelevant evidence is not admissible. MRE 402.[4] The proponent of the evidence bears the burden of establishing its relevance and admissibility. *Edry v Adelman*, 486 Mich 634, 639; 786 NW2d 567 (2010). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Relevance consists of two elements: materiality and probative value. *People v Benton*, 294 Mich App 191, 199; 817 NW2d 599 (2011). A trial court may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403. "Unfair prejudice may exist where there is a danger that the evidence will be given undue or preemptive weight by the jury or where it would be inequitable to allow use of the evidence." *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008).

> Assessing probative value against prejudicial effect requires a balancing of several factors, including the time required to present the evidence and the possibility of delay, whether the evidence is needlessly cumulative, how directly the evidence tends to prove the fact for which it is offered, how essential the fact sought to be proved is to the case, the potential for confusing or misleading the jury, and whether the fact can be proved in another manner without as many harmful collateral effects. [*Id*.]

At trial, the prosecution admitted 15 photographs into evidence, some of which depicted the victim's facial injuries as well as injuries to the victim's scalp and his skull fracture. The photograph in dispute depicts the victim at some point in time before his injury. In the photograph, the victim is smiling and laying on his side. Defendant contends that this photograph was not relevant to this case relative to the other admitted photographs. The trial court concluded that the photograph was relevant because it depicted the victim before the crime took place. The trial court also stated that the photograph was not unfairly prejudicial and that its probative value was not substantially outweighed by a danger of unfair prejudice. The question of defendant's state of mind was vital to this case's outcome. Showing before and after pictures of the victim, relative to when the crime occurred, is relevant to establishing the severity of the victim's injuries and defendant's state of mind. Therefore, the photograph was relevant.

As for prejudice, given the severity of the victim's injuries, showing a precrime photograph of the victim to the jury was likely prejudicial, otherwise there would have been no purpose for the prosecution to present the photograph to the jury. See *People v Fisher*, 449 Mich 441, 451; 537 NW2d 577 (1995). The important consideration for this Court is whether the photograph's probative value was substantially outweighed by a danger of *unfair* prejudice. See *id*. Defendant asserts that the photograph's purpose was to stoke the sympathies and prejudices of the jury and that the photograph contained no probative value. See *People v Eddington*, 387 Mich 551, 562; 198 NW2d 297 (1972). For the aforementioned reasons, the photograph clearly possessed

---

[4] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See ADM File No. 2021-10, ___ Mich ___ (2023). This report relies on the version of the court rules in effect at the time of trial.

probative value.  Moreover, defendant has failed to develop his argument on the photograph's improper purpose beyond mere allegation.  "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998).  Even if defendant had established that the photograph was unfairly prejudicial, he has failed to explain how the jury's viewing of the photograph would have rendered the verdict unreliable.  See MCR 2.613(A) (harmless error).  Therefore, any prejudice or error committed by the trial court would likely have been harmless, given the abundance of evidence regarding the severity of the victim's injuries and defendant's state of mind.  As such, defendant has failed to establish that the trial court abused its discretion when it admitted the photograph of the victim into evidence.

Affirmed.

/s/ Michelle M. Rick
/s/ Kathleen Jansen
/s/ Anica Letica